## BLOODGOOD v. TERRY.

CONTRACTS—TRUSTS—LIFE ESTATE—INCOME.

An instrument selling and agreeing to transfer certain bank stock and other property on the following condition, viz., "that I am to have the income of said stocks" and other property "during my natural life, and after my decease the said stocks" and other property, "and all income arising therefrom, are to be the property of" the assignee, did not convey or agree to convey the income of the property.

Appeal from Monroe; Chester, J., presiding. Submitted May 14, 1903. (Docket No. 77.) Decided September 15, 1903.

Bill by Lynott Bloodgood, individually and as administrator of the estate of Eliza T. Bloodgood, deceased, Louise Bloodgood, and Ruth D. Bloodgood, against Milton G. Terry, individually and as executor of the last will and testament of Louisa P. Terry, deceased, to establish a trust and for an accounting. From a decree for complainants, defendant appeals. Reversed.

*George M. Landon* (*Fred A. Baker*, of counsel), for complainants.

*C. A. Golden* and *E. R. Gilday*, for defendant.

134 Mich.—20.

MOORE, J.   The bill was filed to establish a trust and
for an accounting.   Louisa P. Terry, deceased, was the
mother of appellant and grandmother of complainants,
the children of Eliza T. Bloodgood, deceased, who was
the only sister of appellant.   The circuit judge held that,
by virtue of two instruments (which will be referred to
later), Louisa P. Terry became and was a trustee of Eliza
T. Bloodgood and her heirs, and held the legal title to all
the property in said instruments described and mentioned,
and of all the income and accumulations thereof not ex-
pended by her in her lifetime, in trust for the use and
benefit of said Eliza T. Bloodgood and her heirs, to be
delivered and paid to them on her decease, and that her
executor should be compelled to account therefor.   From
that decree the defendant has appealed.

The record discloses that Mr. Harvey Terry, the hus-
band of Louisa P. Terry, was a resident of Connecticut;
that he died prior to 1858, leaving a will, by which he
gave to his wife five acres of land and a life interest in the
home lot, containing about seven acres.   He also gave to
her absolutely the household furniture and other personal
property, including 11 shares of stock in one bank, and 9
shares of stock in another.   He gave to his only daughter,
Eliza, who, prior to October, 1858, became Mrs. Blood-
good, the privilege of a home in the homestead as long as
she remained unmarried, his melodeon, and 10 shares of
bank stock.   He gave all the rest of his estate to his son,
Milton G. Terry, the defendant.

In October, 1858, Mrs. Terry executed and delivered to
her daughter an instrument reading as follows:

"In consideration of natural affection, and of one dollar
to me paid, which I hereby acknowledge paid, I, Louisa
P. Terry, of Enfield, Conn., do hereby sell, assign, and
agree to transfer to my daughter, Eliza, the wife of Rev.
A. L. Bloodgood, of the same place, the following de-
scribed stocks, and all my right, title, and interest to and
in the same, subject, however, to the condition hereinafter
specified, to wit:   Eleven shares of the capital stock of
the John Hancock Bank of Springfield, Massachusetts,

amounting to eleven hundred dollars, the certificate thereof
being No. 497, bearing date of July 14th, 1858, made to
Louisa Terry (which should have been written Louisa P.
Terry), of Enfield, Conn., and signed by J. W. Thompson,
president, and E. D. Chapin, cashier.

"Also nine shares of the capital stock of the Western
Bank of Springfield, Massachusetts, in two certificates,
one of seven shares, of number 341, bearing date of Jan-
uary 1st, 1857, made to H. Terry, of Enfield, Conn., and
signed by C. Rice, president, and G. P. Bissell, cashier,
and one certificate of two shares, of number 462, bearing
date of October 9th, 1851, made to Harvey Terry, of En-
field, Conn., and signed by C. Rice, president, and G. P.
Bissell, cashier.

"And also, in consideration of affection, and of one
dollar to me paid, which I hereby acknowledge paid, do I
hereby sell, assign, and agree to transfer to my daughter,
Eliza, the wife of said Rev. A. L. Bloodgood, all of my
right, title, and interest in the estate left by my father,
Elisha Parsons, deceased, subject to the use of my mother,
Louisa Parsons, during her natural life, and whatever
shall be coming to me from my said father's estate at the
death of my mother.

"The condition alluded to above is this, to wit: That I
am to have the income of said stocks mentioned above,
and also the income accruing from my said father's estate
to me upon the death of my mother, during my natural
life.    And after my decease, the said stocks, and all of my
interests in the estate of my father, Elisha Parsons, both
by will as well as purchase made of my sister, Mrs.
Amelia Chapin, since my father's death, and all income
arising therefrom, are to be the property of my said
daughter, Eliza, her heirs and assigns, forever.

"Witness my hand and seal this seventh day of October,
1858.

"LOUISA P. TERRY."

August 10, 1859, Mrs. Terry delivered to her daughter
an instrument.   The parts material to this controversy
read as follows:

"The last will and testament of L. P. Terry.

"I, Louisa P. Terry, of the town of Enfield, county of
Hartford, State of Connecticut, being of sound mind and
memory, but mindful of the uncertainty of all human
events, do ordain this, my last will and testament, in the

following words, to wit: My late deceased husband, prior to his death, and myself, having given in a will to our son, Milton G. Terry, his full and entire share of all our properties owned or. coming to us, and not having given our daughter, Eliza, her just and equal share, but having been requested by my husband so to do after his decease, do therefore, in order to make such just distribution, give, devise, and bequeath to my said and only daughter, Eliza, the wife of the Rev. A. L. Bloodgood, of Enfield, Connecticut, and to her heirs and assigns, forever, the following described stocks, and all my right, title, and interest to and in the same, to wit."

Then follows a description of the bank stock mentioned in the instrument of October 7, 1858.

"And I also give, devise, and bequeath to my said daughter, Eliza, the wife of the said Rev. A. L. Bloodgood, all of my right, title, and interest in the estate left by my father, Elisha Parsons, deceased, subject to the use of my mother, Louisa Parsons, during her natural life, and whatever shall be coming to me from my said father's estate at the death of my mother, Louisa Parsons, including, also, whatever shall come to me of the purchase of my sister Amelia Chapin's portion, made since my father's death; intending to make my daughter, Eliza, my sole legatee after my death.

"Louisa P. Terry.   [Seal.]"

Attached to this instrument was the following:

"Having received all that should justly come to me of my father's or mother's property, I certify to the above as justly due to my sister, Eliza, now Mrs. A. L. Bloodgood, and therefore renounce all interest, right, or title whatever in the same, forever.

"Milton G. Terry.

"August 10, 1859."

Mrs. Bloodgood, the daughter, died in October, 1888, leaving complainants her only heirs at law.   It was the two instruments mentioned above which the circuit judge held constituted a trust.

A further statement seems necessary to an understanding of the case.   It is the claim of defendant, and there is testimony tending to sustain it, that, after the death of

Harvey Terry, defendant and his mother continued to live
on the homestead in Connecticut for eight years; that he
improved the farm, greatly increasing its value; and that,
from the income from the farm and the $1,100 stock in the
John Hancock Bank, his mother bought from $1,500 to
$2,000 worth of United States bonds.   It is his claim that
in 1865 the defendant and his mother sold the real estate
in Connecticut for the sum of $8,000; that of the real
estate so sold the defendant owned 27 acres, and the fee to
the home subject to the mother's life estate, and the mother
owned, in addition to her life estate in the home lot, 5 acres
of land in fee; that the defendant and his mother then
moved to the city of Monroe, Mich., and invested between
$6,400 and $6,700 in a home in said city, the title to which
was taken in the mother's name; that the balance of the
$8,000 was given to the mother, who kept it invested till
the time of her death.

Mrs. Terry died in December, 1901, at the age of 93
years and 5 months.   At the time of her death her estate
inventoried $8,225.   During her lifetime she assigned to
defendant mortgages aggregating $2,000.   On August 10,
1889, she made her last will, by the terms of which she
gave to complainants "eleven shares of the capital stock
of the John Hancock National Bank of Springfield, Mass.,
with all interest and dividends thereon that may be unpaid
at the time of my decease;" and, further:

"I give and bequeath [to complainants] the sum of
nineteen hundred dollars, to be divided between them,
share and share alike, and to be paid to them within one
year after my decease, with interest from and after my
decease until so paid.   The nineteen hundred dollars so
above bequeathed is the full amount and sum I received
and realized from the nine shares of the stock of the West-
ern Bank, Springfield, Mass., and from my father's estate,
and from the purchase from my sister, Amelia Chapin, and
this, with the eleven shares of the bank stock of the John
Hancock National Bank, is in compliance with and dis-
charge of the agreement heretofore made with my daugh-
ter, Eliza Bloodgood, now deceased, the mother of my said
grandchildren, the beneficiaries above named."

It also gave to the complainants the wearing apparel and personal ornaments, silver and china ware, etc., of the deceased. This will was duly admitted to probate.

On the part of defendant it is claimed that the paper of October 7, 1858, was not a transfer of property, but at most was but an agreement to transfer at some future time, and was without consideration, and revocable; that the parties so construed it when Mrs. Terry made the will in 1859. In our view of the case, we do not deem it necessary to decide this contention. Giving the instrument of October 7, 1858, the fullest effect, we think it conveys to Mrs. Bloodgood and her heirs the property described therein, reserving to Mrs. Terry the income therefrom as long as she lived. There is no ambiguity in the language used. This, too, was the construction put upon it by the parties. Mrs. Terry lived nearly 44 years after the delivery of the paper of October, 1858. During that time no one asked her for the unexpended portion of the income. Thirty-one years after making the paper she gave her understanding of the transaction by the making of the will which was admitted to probate. We think the circuit judge erred in the construction he gave to the language employed by Mrs. Terry. It is not questioned that the will which was admitted to probate accounts for the proceeds of all the property mentioned in the paper of October, 1858, exclusive of the income therefrom during the life of Mrs. Terry. It follows that there was no occasion for filing the bill of complaint.

The decree is reversed, and one will be entered here dismissing the bill of complaint, with costs of both courts to the defendant.

The other Justices concurred.